LOUIS G. PICOT, ADM'R WITH THE WILL ANNEXED OF ANN E. DILLON, Respondent, *v.* BARTON BATES, TRUSTEE, &C., Appellant.*

1. *Practice — Parties — Distributees — Trustee.*—In a suit in equity brought by one distributee of the estate of an intestate against the administrator to set aside a settlement on the ground of fraud, all the distributees must be made parties either as plaintiffs or defendants, to avoid multiplicity of suits and to enable the court to make a complete and binding decree. Although a trustee of an express trust may, by the statute, sue without joining the beneficiaries with him, *quære,* can he be sued alone ?

2. *Limitations — Administration — Trust.*—To a suit by the distributee of an intestate against an administrator holding the fund in trust, the statute of limitations does not apply. No lapse of time is a bar to a direct trust, or a fraud as between trustee and beneficiary. Where there is no person to sue, no laches can be imputed. A devisee cannot show title to personal estate until the will has been admitted to probate, and no cause of action accrues until letters testamentary or of administration are granted.

*Appeal from St. Louis Circuit Court.*

The petition in this case, filed August 12, 1858, alleged that Ann T. Dillon died in 1837 leaving issue Ann E. (plaintiff's testatrix), Martha, and Susan ; that P. M. Dillon, her husband, took out letters upon her estate ; that as administrator he collected $2,768.49, in the year 1845, from the estate of John T. Nash ; that at December term, 1845, he made a fraudulent settlement of said estate by crediting himself with $2,301.22 for a demand due him by the estate of said John T. Nash, being the same item with which he had charged himself, and also with the sum of $1,116.49 interest, and that these two items were fraudulently charged — that they had never been allowed against the estate of said Ann T. Dillon—that he fraudulently charged commissions, &c., specifying the items; that the testatrix died October 30, 1842, leaving a will, which was probated July 24, 1854, but no letters were granted until July 28, 1856, when they were grant-

---

* This case was decided at the March Term, 1866, and was omitted in vol. 38.

ed to plaintiff; that P. M. Dillon died leaving a will, probated January 28, 1851, by which he devised his estate to defendant and one Provenchere, who renounced, as trustees for the children of P. M. Dillon ; that executors were appointed, who qualified, and afterwards transferred the estate to defendant. The petition then showed how the issue of P. M. Dillon took under the will, and were represented by defendant as trustee, and therefore were not material parties to the suit. The petition then prayed that the settlement be corrected, and that to avoid circuity of action he might recover the share of Ann E. Dillon in her mother's estate, &c.

Defendant demurred, assigning two causes. 1. No cause of action stated in the petition. 2. That suit should have been against the personal representatives of Patrick M. Dillon.

Demurrer was overruled. Defendant answered and traversed the petition, and then pleaded the limitation of the administration act—three years, and of ten years.

The case went to trial. Plaintiff showed letters on estate of Ann E. Dillon to the plaintiff, granted August 28, 1856. Will of Ann E. Dillon, devising all her property to Marie Pommeral, dated October 4, 1842; probated July 24, 1854; she died October 30, 1842. Administration of estate of Ann T. Dillon; affidavit of heirs made, &c., November 10, 1837, showing that Ann E. Dillon was one of three children of Ann T. Dillon; inventory and accounts; settlement of December term, 1845, showing fraudulent credits, &c. Will of P. M. Dillon, devising his estate for the benefit of his children, to trustees, defendant, &c.

P. M. Dillon died January, 1851 ; letters granted January 29, 1851; proof of notice of letters made.

The defendant asked several instructions upon the effect of P. M. Dillon's settlements and the question of limitation.

The court found the settlements fraudulent, made the proper corrections, and gave judgment for Ann E. Dillon's share of her mother's estate.

Motion for new trial filed and overruled. Motion in arrest

filed, but stricken out because not filed within four days, and appeal.

*W. A. Alexander*, for appellant.

I. The will of Patrick M. Dillon shows that while the naked legal title vests in Barton Bates, the equitable and beneficial title vests wholly in the two daughters of Dillon and their issue.  A decree in this case against the trustee would have to be satisfied out of the estate of Dillon's heirs exclusively; but such a decree cannot be rendered without bringing them into court.  Their estate cannot be taken away for any alleged misconduct of the ancestor not growing out of, nor connected with, the trusteeship of Bates, without notice to them and opportunity to defend.

1. As this is a proceeding in chancery, it is clear that the other parties in interest, or rather the real parties in interest should be brought into court.

2. The petition shows on its face that the alleged fraud, if any, occurred more than five years, namely, thirteen years before the beginning of this action—R. C. 1855, p. 1048, Act of Limitations, art. 11, § 3, last clause.  " Wherefore it is insisted in the present case that it ought to be charged in the bill that the fraud was discovered within five years, if the fact were so"—3 P. Wms. 144.  If the fact were not so, this action is barred by the statute of limitations.

The discovery of the alleged fraud is made by our statute, as it was by the British statute, a distinct, material and traversable fact.  Its averment would have enabled defendant to plead another and totally distinct matter of defence.  If such new averment had been disproved, it would have been fatal to plaintiff's case.  It may be added, that a failure to plead an independent and material allegation is not cured by verdict—2 Doug. 683; 3 Conn. 515; Buxenden v. Sharp, 2 Salk. —; 13 Vt. 70.

II. There is no fraud.

1. To make out a case of fraud plaintiff must show, first, a claim asserted by Dillon to which he is not in law or equi-

ty entitled ; second, the judgment of the probate court allow-
ing such claim ; third, some trick, some cheat practised by
Dillon either on some of the parties in interest or on the
court which allowed the claim, by which an advantage was
gained which but for the deception could not have been
gained, and by which (at least, as to the parties in interest)
the parties, or some of them, were actually deceived, and had
a right to be deceived.

These three facts must co-exist to make fraud :

*First*—The evidence in the case does not show that either
of the claims objected to was illegal and inequitable.

*Second*—The second essential element in a case of fraud
is proof of the probate court allowing these claims.  On this
point there is no evidence whatever ; the only evidence look-
ing towards it is the  account rendered.  But, first, there is
no evidence of the order or judgment of the probate court
allowing and approving the account ; second, the certificate
of the probate court judge shows positively that this is not a
final settlement but an account rendered.  How many ac-
counts were afterwards rendered before the final settlement,
and whether, if there is any illegal claim set forth in this
account, it was afterwards reviewed and corrected, does not
appear.  This court will not presume fraud in an adminis-
trator nor improper action in the probate court.  To make
out this second element of his alleged case of fraud the plain-
tiff had to produce, first, the final settlement, and, second,
the judgment of the probate court allowing the final settle-
ment : he has produced neither.

*Third*—If the plaintiff had established the first two ele-
ments of fraud, he was bound also to show some trick prac-
tised by Dillon on the court, or some party in interest, by
which he gained an advantage not otherwise to have been
gained, and by which the court or a party in interest was in
fact deceived, and had a right to be deceived.

The appellant submits the following suggestions :

1. If it were shown that the commissions and claims men-
tioned in the petition were allowed by the probate court,—

then, since such allowance is a judgment of the court, this court will presume it to be correct. The evidence on which the probate court rendered the judgment is not preserved for the inspection of this court, and in its absence this court will presume that the evidence before the probate court was satisfactory and sufficient.

2. To set aside the judgment of the probate court on the ground of fraud, when no evidence is presented except a part of the judgment-roll itself, which was as open to the inspection of the probate court as it is to this court, would be to impute to the probate court itself a complicity with the alleged fraud of Dillon.

3. This court, in the absence of the evidence on which the probate court acted, will presume not only that there was no fraud, but that the judgment was actually right.

4. Mere error does not prove fraud, neither does the illegality of a claim prove fraud—12 Ves. 388 & 391; 20 Mo. 87; 23 Mo. 95; Id. 236.

If there is no fraud, the action falls on two grounds:—First, as this is not an appeal from the judgment of the probate court, that judgment cannot be disturbed except for fraud. Second, fraud is the gist of the action; if that fails, his case fails.

III. This action is barred by the statute of limitations.

The statute applies to this case—Kane v. Bloodgood, 7 Johns. Ch. 110–13, 117, 121, 127; 27 Mo. 591; 8 Mo. 286; 20 Mo. 97. The case in 12 Mo. 3, has no application; that was an action to compel an administrator to render account, which is exclusively an action in equity.

*Whittelsey*, for respondent.

I. The demurrer was properly overruled. It was not made on account of defect of parties—R. C. 1855, p. 1231, §§ 6 & 110. The objection was no cause of action. The petition showed that there was no person capable of suing until plaintiff was appointed administrator of Ann E. Dillon in 1856, and then the administration of Patrick M. Dillon had been

closed, and the defendant holding as trustee of an express trust the beneficiaries were not material parties—R. C. 1855, pp. 1217–18. As they took under his will, they had no interest in questioning his acts.

II. P. M. Dillon was an administrator of his wife, and trustee for his children for their shares of his personal estate. For that estate and the share coming to Ann E. Dillon, as she died before it was received, no one could sue but her personal representative, and there was no personal representative until plaintiff was appointed administrator in 1856, at which time the administration of P. M. Dillon's estate had been closed and the assets turned over to defendant.

The statute of limitations, therefore, does not apply to this case. P. M. Dillon was trustee; the plaintiff is only following the trust estate, and seeking an account thereof in the hands of defendant. When he made his settlement in 1845, Ann E. Dillon was dead; there was, therefore, no person in being capable of suing until 1856, when letters were granted; so that no cause of action accrued to any person capable of suing, or who could be barred—Ang. Lim. ch. 7; McDonald v. Walton, 1 Mo. 726; Reilly v. Chouquette, 18 Mo. 200; Murray v. East India Co., 5 Barn. & Ald. ——; Polk's Adm'r v. Allen, 19 Mo. 467; Miller v. Woodward, 8 Mo. 169; Finney v. State to use, &c., 9 Mo. 227.

An administrator is a trustee, and cannot set up the statute of limitations in bar of persons entitled to distribution—Ruby v. Barnett, 12 Mo. 3, 8; DeCouche v. Savitier, 3 Johns. Ch. 190; Kane v. Bloodgood, 7 id. 126. Montgomery v. Hernandez, 12 Wheat. 129; Chambers' Adm'r v. Smith's Adm'r, 23 Mo. 174; McDonald v. Walton, 2 Mo. 48. Trustee cannot plead statute—Ang. Lim. § 168.

In cases of fraud (Ang. Lim. § 170; Michaud v. Girod, 4 How., U. S., 503, 5 Ct., the statute R. C. 1855, p. 1048, sec. 3, s.d. 5, provides that an action for relief upon the ground of fraud shall not be deemed to have accrued until the discovery of the fraud by the aggrieved party. Until

there was some person capable of suing there could be no person who could discover the facts. There was no person capable of making a demand or attacking the settlement until plaintiff qualified as administrator, and he sued within two years.

The judgment of the court, upon the facts, was for the right party.

HOLMES, Judge, delivered the opinion of the court.

This was a petition in equity by the administrator of one of several distributees of the estate of their mother, not making the others parties, against the defendant as trustee in an absolute and express trust under the will of the deceased father, who had been administrator of the mother's estate, to set aside an alleged settlement of the administrator's account in the St. Louis Probate Court, on the ground of a false and fraudulent statement of the account, whereby the distributees had been defrauded of their respective shares in the distributable surplus; and the defendant was charged as having received this surplus from the administrators of the estate, when the estate was settled under the will, to be disposed of in accordance with the trust therein contained. The party represented by the plaintiff was not one of the beneficiaries in the trust created by the will.

The defence rested upon the several grounds, first, that the other distributees were not made parties; second, the statute of limitations; third, that the fraud was not proved; and fourth, that there was no evidence of any settlement or allowance of the account rendered by the administrator.

As to the parties, the petition proceeds upon the assumption that the other distributees are represented by the trustee defendant as beneficiaries under the trusts of the will, and upon the allegation and proofs that all the other distributees of the mother's estate were such beneficiaries and so represented. To this it may be answered that as beneficiaries of the trust merely they were not therefore represented, also, in their character of distributees of their mother's estate.

It may be conceded that this was a demand upon the trust property which existed prior to the creation of the trust, and that the absolute disposition of the trust property was vested in the trustee in such manner that the beneficiaries therein would be sufficiently represented by the trustee defendant in respect of the trust created by the will—Sto. Eq. Pl. §§ 149, 215; 2 Smith's Eq. 389; Osborne v. Farmer, 2 Hare, 558. This would be so, upon general principles, independent of the statute which is relied on—R. C. 1855, p. 1217, § 2. This statute provides that a trustee of an express trust may sue in his own name without joining the beneficiaries with him; but it does not say that he may be sued in that manner. It may be seriously doubted whether it was the intent of this act that the same rule should be applied to a trustee defendant. However this may be (and it is unnecessary to decide this question now), we think the general principles of equity pleading may be so far relied on in this case. But the trustee cannot be considered as representing the distributees at all in their character of distributees. Their rights as such have nothing to do with the trust under the will. So far as their rights are concerned, they are adverse to the will. This is a proceeding by a distributee in pursuit of a fund which has come into the hands of the trustee under the will of the deceased administrator of the mother's estate. The general doctrine of equity is, that, in such a suit, all the distributees, as well as all residuary legatees, must be made parties, as well to avoid multiplicity of suits as to enable the court to make a complete and binding decree, disposing of the whole matter, unless the others are unknown, or cannot be found within the jurisdiction of the court—Sto. Eq. Pl. §§ 73, 89, 90; West v. Randall, 2 Mason, 181; Hallet v. Hallet, 2 Pars. Ch. 20; Daverne v. Fanning, 4 J. Ch. 199. There are some exceptions to this rule, as where, for instance, there is a certain and fixed trust fund, and each *cestui que trust* has a certain aliquot part of it distinct from the others, so that there is no common interest in the object of the bill as in the case of an assignee of one seventh part of

an ascertained trust fund standing in the name of a trustee.
—Sto. Eq. Pl. § 212. We are by no means satisfied that
this is such a case. Here the aliquot part is not fixed by
any instrument or contract, but depends upon proof of mat-
ter of fact and calculation. Some sort of an account must
be taken and stated. Where an account is necessary to as-
certain the shares, or the parties in interest stand in differ-
ent classes, or the entirety is in any way to be dealt with, all
the distributees must be made parties before a final decree
can be rendered; and it may very well be doubted whether
the trustee has not a right to claim that this shall be done
for his own protection, and whether he can be compelled to
part with any portion of the trust fund until all the parties
are brought before the court, so that the whole matter can
be determined at once—Phillipson v. Galty, 6 Hare, 281;
Adams' Eq. 318. The distributees stand in different classes
here. When the number, kinship, and class of the distrib-
utees are ascertained by the evidence, the law fixes the
shares. These facts are indeed alleged in the petition, and
some evidence was produced; but there was no party plain-
tiff or defendant before the court who was in a position to
contest these facts, and the absent parties distributees could
not be bound by the decree to be rendered. In some cases,
as where the plaintiff sued alone for his one fourth part
of the trust fund, and it appeared that other persons, not
made parties, were entitled to the other three fourths, the
court ordered the other three fourths to be paid into court,
with liberty to those persons to apply for their shares—2
Smith's Eq. Jur. 309. But we find no case where a final
decree was made for one share only. It does not appear
that the other distributees were either unknown, or beyond
the jurisdiction of the court. No good reason is given why
they were not made parties. If they refused to join as plain-
tiffs, they could have been made defendants, under the stat-
ute—R. C. 1855, p. 1218, § 3, 4, 5. That they would have
been proper parties, there can be no question; and we are
inclined to think they were, in the language of the statute,

necessary parties to a complete determination and settlement of the questions involved. A demurrer to the petition on the ground of a defect of parties was overruled. We think it should have been sustained.* Whether the decree rendered should be reversed on this ground alone, if there were no other; or whether or not, under special circumstances, or for any peculiar reasons appearing in the particular case, a final decree might not, in some instances, be affirmed, we will not now undertake to say. The rule, it seems, is not an inflexible one, and may be dispensed with where the peculiar circumstances are such as not to admit of its application, or the court would be ousted of its jurisdiction of the case, or where justice could not otherwise be done to a party who had shown himself entitled to relief—Cockburn v. Thompson, 16 Ves. 328 ; West v. Randall, 2 Mass. 181.

The statute of limitations was no bar to the suit. The cause of action did not accrue to any person who had capacity to sue, until an administrator of the deceased distributee had been appointed—Miller v. Woodward, 8 Mo. 169; Polk v. Allen, 19 Mo. 467. To a suit by a distributee for his share against an administrator, holding the fund in trust, the statute of limitations does not apply. No lapse of time is a bar to a direct trust, or a fraud, as between trustee and beneficiary—Ruby v. Barnett, 12 Mo. 3; Decouche v. Savitier, 3 J. Ch. 190; 2 Smith's Eq. Jur. 62. There is no express statute provision here which has a particular application to a case of this kind, and modifies the rule of equity. This was not a suit upon any bond, or other demand, which was governed by any special statute.

As to the three years' bar of the administration act, this was not an ordinary indebtedness or demand against the estate, but a trust fund held in trust for the distributee; and the distributee being dead, there was no person in exist-

---

* The causes of demurrer assigned were, 1. That petition did not show a cause of action ; 2. That the suit should have been brought against the personal representatives of P. M. Dillon.

ence who could sue for this money until an administrator was appointed, or until the will under which her devisee claimed was admitted to probate. A devisee cannot show a title to personal estate under a will until the will has been proved—Shepard v. Nabors, 6 Ala. 637. As to the discovery of the fraud, it does not appear that the facts constituting the fraud were known to the devisee, before or after the probate of the will, so that no cause of action at law, or in equity, can be deemed to have accrued in her favor before letters of administration were granted to the plaintiff; and this suit was brought within five years after the date of the letters. Where there is no person to sue, no laches can be imputed—Reilly v. Chouquette, 18 Mo. 220.

The other grounds of defence may be considered together. It is insisted that there was no proof of any settlement, final or other, nor of any fraud in the account settled. The only evidence which was adduced to establish these facts consisted in a copy of the affidavit and inventory, showing a debt and interest due to the estate from the estate of one Nash, an abstract of demand allowed against the estate of Nash for this debt, and a copy of an account rendered by the administrator by which it appears that he had charged himself with the amount of this debt and interest as collected from Nash's estate, and credited himself "by amount of my demand allowed by this court against the estate of John T. Nash, deceased," the same sums for principal and interest, and a balance was struck in his favor. This paper is certified from the probate court to be a true copy of "the account rendered by said administrator, as the same now remains of record in the office of the judge aforesaid." This was all the proof. It merely shows that this account rendered was handed in to the judge of the court and remained there among his papers. It is not even filed. There is nothing to show that it ever became a record, nor that any action was ever taken on it by the court, much less that the account so rendered was ever allowed by the court in any settlement whatever. A settlement must be the act and

judgment of the court, of which there must be some record. No record is produced. A settlement of this kind cannot be presumed here; nor is it to be supposed that the probate court would allow such an account without some proof of its correctness, but quite the contrary. It is rather to be inferred, if any inference were to be allowed, that a full record of the proceedings and final settlement would show that this account had not been allowed on settlement, or that the account was just and correct, and that the administrator had paid over all sums due when so ordered by the court. No certified copy of the full record and proceedings is produced. This paper does not appear to have any official character, much less that of a record. We are inclined to think it was not admissible in evidence at all by itself for any purpose. It was not even proved to have been in the handwriting of the administrator. It will be time' enough to consider the question of fraud when some competent evidence shall be produced to establish the fact. Moreover, it does not appear on this record in what manner the deceased wife came to have a separate estate in this personalty.

Judgment reversed, and the cause remanded, with leave to the plaintiff to amend his petition.

Judge Wagner concurs; Judge Lovelace absent.

